# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER,<br><br>      *Plaintiff,*<br>  v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*,<br><br>      *Defendants.* | Civil Action No. 18-0760 (CKK) |

## <u>DEFENDANTS' RENEWED MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(h)(3) FOR LACK OF SUBJECT MATTER JURISDICTION</u>

Pursuant to Federal Rule of Civil Procedure 12(h)(3), Defendants, by and through their undersigned counsel, hereby move the Court to dismiss Plaintiff's Claims Nos. 1, 2, 3, 5, and 6 of its Second Amended Complaint, ECF No. 70. Defendants' motion is based on the accompanying Memorandum of Points and Authorities in Support of the Motion.

A proposed Order consistent with this Motion is attached.

Dated: July 14, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

YAMILETH G. DAVILA
Assistant Director

*/s/Ruth Ann Mueller*
RUTH ANN MUELLER

(D.C. Bar No. 1617339)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

DAVID BYERLEY
(D.C. Bar No. 1618599)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

JAMES WALKER
(D.C. Bar No. 1032636)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044


CHRISTOPHER LYERLA
(TX Bar No. 24070189)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this motion and the accompanying memorandum of law, on the Court and all parties of record by filing them with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

Dated: July 14, 2020

/s/ Ruth Ann Mueller
Attorney for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SOUTHERN POVERTY LAW CENTER,

      *Plaintiff,*

  v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      *Defendants.*

Civil Action No. 18-0760 (CKK)

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RENEWED MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(h)(3) FOR LACK OF SUBJECT MATTER JURISDICTION

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

LEGAL STANDARD..........................................................................................................2

BACKGROUND .................................................................................................................4

ARGUMENT.......................................................................................................................9

I.    THE INA CATEGORICALLY BARS THIS COURT'S REVIEW OF SPLC'S CLAIMS SEEKING RELIEF ON BEHALF OF ITS CLIENT-DETAINEES.................................................................................................9

    A.  SPLC's access-to-counsel allegations are inextricably intertwined with its client-detainees' removal proceedings and barred from review per section 1252(b)(9). .....................................................................9

    B.  SPLC incorrectly characterizes this action as a "conditions of confinement" lawsuit in order to create subject matter jurisdiction. ....................21

    C.  The Court lacks jurisdiction to review discretionary determinations. ...................26

II.    THE COURT LACKS JURISDICTION OVER SPLC'S APA CLAIMS .................30

    A.  SPLC fails to identify the specific agency actions of which they seek judicial review......................................................................................26

    B.  The APA does not provide a mechanism for review of claims barred by statute. ...............................................................................36

CONCLUSION...................................................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) ................................................................................ 21

*Aguilar v. U.S. Immigration and Customs Enf't Div. of Dep't of Homeland Sec.*,
510 F.3d 1 (1st Cir. 2007) .................................................................................. *passim*

*Alvarez v. Sessions*,
338 F. Supp. 3d 1042 (N.D. Cal. 2018) .................................................... 16, 17, 20

*Am. Farm Bureau v. Envtl. Prot. Agency*,
121 F. Supp. 2d 84 (D.D.C. 2000) .............................................................. 4, 6, 7, 25

*Am. Immigration Lawyers Ass'n v. Reno*,
199 F.3d 1352 (D.C. Cir. 2000) ................................................................................ 4

*Aquilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*,
490 F. Supp. 2d 42 (D. Mass. 2007) ....................................................................... 29

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) .................................................................................................. 3

*Arroyo v. DHS*, No. 19-cv-815,
2019 WL 2912848 (C.D. Cal. June 20, 2019) ....................................................... 20

*Artis v. Greenspan*,
223 F. Supp. 2d 149 (D.D.C. 2002) .......................................................................... 4

*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983) .................................................................................. 3

*Avilez v. Barr*,
No. 2020 WL 570987 (N.D. Cal. Feb. 5, 2020) ..................................................... 20

*Batanic v. INS*,
12 F.3d 662 (7th Cir. 1993) .................................................................................... 12

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986) .................................................................................................. 3

*Bennett v. Spear*,
520 U.S. 154 (1997) .................................................................................................... 32

*Berkshire Fashions, Inc. v. M.V. Hakusan, III*,
954 F.2d 874 (3d Cir. 1992) ......................................................................................... 3

*Bivens v. Six Unknown Named Agents*,
403 U.S. 388 (1971) .................................................................................................... 21

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984) ................................................................................................ 36, 37

*Bourdon v. United States Dep't of Homeland Sec*,
940 F.3d 537 (11th Cir. 2019) ..................................................................................... 28

*C.G.B., et al., v. Wolf, et al.*,
2020 WL 2935111 (D.D.C. June 2, 2020) ............................................ 27, 32, 33, 34

*Camreta v. Greene*,
563 U.S. 692 (2011) .................................................................................................... 21

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*,
387 F. Supp. 3d 33, (D.D.C. 2019) ............................................................................. 34

*Coalition for Underground Expansion v. Mineta*,
333 F.3d 193 (D.C. Cir. 2003) ...................................................................................... 4

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001) ................................................................................... 32

*Cobell v. Norton*,
392 F.3d 461 (D.C. Cir. 2004) ..................................................................................... 35

*Cohen v. United States*,
650 F.3d 717 (D.C. Cir. 2011) ..................................................................................... 36

*Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Sessions*,
344 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................... 21, 22

*Demore v. Kim*,
538 U.S. 510 (2003) ............................................................................................ 26, 27, 28

*DRG Funding Corp. v. HUD*,
76 F.3d 1212 (D.C. Cir. 1996) ........................................................................... 32

*E.O.H.C v. Secretary United States Department of Homeland Security*,
950 F.3d 177 (3rd Cir. 2020) .............................................................................. 19

*EEOC v. St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997) .............................................................................. 4

*El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*,
396 F.3d 1265 (D.C. Cir. 2005) .......................................................................... 36

*E.O.H.C v. Secretary United States Department of Homeland Security*,
950 F.3d 177 (3d Cir. 2020) ............................................................................... 19

*Euclid Street, LLC v. District of Columbia Water and Sewer Authority*,
41 A.3d 453 (D.C. Cir. 2012) ................................................................................ 3

*Gandarillas-Zambrana v. BIA*,
44 F.3d 1251 (4th Cir. 1995) .............................................................................. 29
\
*Haase v. Sessions,*
835 F.2d 902 (D.C. Cir. 1987) .............................................................................. 3

*Harbury v. Hayden*,
444 F. Supp. 2d 19 (D.D.C. 2006) ................................................................ 2, 4, 9

*Harris v. United States*,
148 F. Supp. 3d 1 (D.D.C. 2015) ........................................................................ 11

*Hatim v. Obama*,
760 F.3d 54 (D.C. Cir. 2014) .............................................................................. 21

*Innovation Law Lab v. Nielsen*,
310 F. Supp. 3d 1150 (D. Or. 2018) ............................................................... 19, 20

*INS v. St. Cyr*,
533 U. S. 289 ..................................................................................................... 26

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) .................................................................... *passim*

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ................................................................................. *passim*

*Jilin Pharm. USA, Inc. v. Chertoff*,
447 F.3d 196 (3d Cir. 2006) ..................................................................... 27

*Joorabi v. Pompeo*, No. 1:20-CV-1,
08-RCL, 2020 WL 2527209 (D.D.C. May 17, 2020) ............................. 2, 3

*Keeton v. Wells Fargo Corp.*,
987 A.2d 1118 (D.C. Cir. 2010) ............................................................... 3

*Kontrick v. Ryan*,
540 U.S. 443 (2004) .................................................................................. 3

*Kucana v. Holder*,
558 U.S. 233 (2009) .................................................................................. 27

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................. 3

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .................................................................... 30, 31, 32

*Martinez v. Napolitano*,
704 F.3d 620 (9th Cir. 2012) .................................................................... 16

*Michel v. INS,*
206 F.3d 253 (2d Cir. 2000) ..................................................................... 12

*Murray v. Amalgamated Transit Union*,
206 F. Supp. 3d 202 (D.D.C.) ................................................................... 3

*Nasrallah v. Barr*,
140 S.Ct. 1683 (2020) ............................................................................... 26

*Nat'l Immigration Project of Nat'l Lawyers Guild v. Executive Office of Immigration Review*
("*NIPNLG*"),
No. 1:20-0852, 2020 WL 2026971 (D.D.C. Apr. 28, 2020) ................... *passim*

*Norton v. S. Utah Wilderness,*
*All.*, 542 U.S. 55 (2004) .............................................................. 31, 34, 35

v

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019) ............................................................................. 11

*Osage Producers Ass'n v. Jewell*,
191 F. Supp. 3d 1243 (N.D. Okla. 2016) ................................................................. 30, 31

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) ....................................................................................... 28

*RCM Techs., Inc. v. DHS*,
614 F. Supp. 2d 39 (D.D.C. 2009) ............................................................................... 34

*Rios–Berrios v. INS,*
776 F.2d 859 (9th Cir. 1985) ....................................................................................... 12

*Singh v. Gonzales*,
499 F.3d 969 (9th Cir. 2007) ................................................................................. 17, 18

*Skurtu v. Mukasey*,
552 F.3d 651 (8th Cir. 2008) ................................................................................. 11, 18

*Torres v. U.S. Dep't of Homeland Security*,
411 F. Supp. 3d 1036 (C.D. Cal 2019) ......................................................... 24, 25, 34

*United States ex rel. El–Amin v. George Washington Univ.*,
No. Civ. A 95–2000(JGP), 2005 WL 485971 (D.D.C. Feb. 25, 2005) ......................... 3

*Vetcher v. Sessions*,
316 F. Supp. 3d 70 (D.D.C. 2018) ........................................................................ 1, 10

*Washington v. U.S. Dep't of Homeland Sec.*,
387 F. Supp. 3d 33 (D.D.C. 2019) ............................................................................... 34

*Zhu v. Gonzales*,
411 F.3d 292 (D.C. Cir. 2005) ..................................................................................... 27

## STATUTES

5 U.S.C. § 701(a)(1) ............................................................................................... 2, 36

5 U.S.C. § 701(a)(2) ..................................................................................................... 37

5 U.S.C. § 702 .............................................................................................................. 30

5 U.S.C. § 704 ................................................................ 2, 31, 32, 36

5 U.S.C. § 706 ........................................................................ 8, 34

5 U.S.C. § 706(2)(A) ..................................................................... 35

8 U.S.C. § 1226(a) ................................................................... 1, 28

8 U.S.C. § 1226(e) .............................................................. *passim*

8 U.S.C. § 1226(g) ....................................................................... 1

8 U.S.C. § 1231(g) ................................................................. 8, 21

8 U.S.C. § 1231(g)(1) .................................................................. 29

8 U.S.C. § 1252 ...................................................................... 9, 28

8 U.S.C. § 1252(a)( ..................................................................... 21

8 U.S.C. § 1252(a)(5) ........................................................ *passim*

8 U.S.C. § 1252(a)(2)(B)(ii) ........................................................... 1

8 U.S.C. § 1252(a)(5) ........................................................ *passim*

8 U.S.C. § 1252(b)(9) ........................................................ *passim*

8 U.S.C. § 1362 ........................................................................ 11

28 U.S.C. § 2241 ...................................................................... 11

28 U.S.C. § 2401(a) ................................................................... 29

42 U.S.C. § 1983 ...................................................................... 21

## RULES

FED. R. CIV. P. 12(b)(1) ............................................................... 3

FED. R. CIV. P. 12(b)(6) .............................................................. 34

FED. R. CIV. P. 12(h)(3) ...................................................... *passim*

OTHER AUTHORITIES

Amendments to Federal Laws to Protect Against Terrorist Entry
H.R. CONF. REP. 109-72, 2005 ................................................................................................14

ICE Detention Standards
https://www.ice.gov/factsheets/facilities-pbnds., February 24, 2012 ........................................... 5

ICE  Detention Managmene
https://www.ice.gov/detention-management, May 7, 2012 ........................................................... 5

## INTRODUCTION

The Court should dismiss Plaintiff Southern Poverty Law Center's ("SPLC's") attempt to circumvent explicit jurisdictional bars. Defendants the United States Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") (collectively "Defendants"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(h)(3), respectfully renew their motion to dismiss Claims Nos. 1, 2, 3, 5, and 6 of the Second Amended Complaint ("SAC") filed August 28, 2019 (ECF No. 70), for lack of subject-matter jurisdiction. In support of this motion, Defendants respectfully refer the Court to this memorandum and the entire record in this case.

This Court lacks subject matter jurisdiction to review SPLC's claims asserted on behalf of its client-detainees' due process rights arising within the context of removal proceedings. As a threshold matter, the Immigration and Nationality Act ("INA") requires "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" to be reviewed exclusively in federal courts of appeals—not district courts—after exhausting administrative proceedings, 8 U.S.C. §§ 1252(b)(9), 1252(a)(5), including Plaintiff's "policies and practices challenges," right-to-counsel claims, and procedural-due-process challenges. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029, 1033, 1035 (9th Cir. 2016); *Nat'l Immigration Project of Nat'l Lawyers Guild v. Executive Office of Immigration Review* ("*NIPNLG*"), No. 1:20-0852, 2020 WL 2026971 (D.D.C. Apr. 28, 2020); *Vetcher v. Sessions*, 316 F. Supp. 3d 70, 76 (D.D.C. 2018); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 840-41 (2018). Likewise, pursuant to sections 1226(a), 1226(e), 1252(a)(2)(B)(ii) and 1231(g), SPLC may not challenge discretionary determinations concerning bond, parole, or the geographic detention of detainees outside of the context of removal proceedings. SPLC's hodgepodge of

1

allegations concerning unidentified detainees in various facilities does not surmount the explicit jurisdictional bars.

Further, the Administrative Procedure Act ("APA") only provides an avenue for relief when both a final agency action has occurred, and when there is no other adequate remedy for that final action. 5 U.S.C. § 704. Consistent with the recent decision in *NIPNLG*, 2020 WL 2026971 at *10, until an immigration judge renders a final order in a detainee's individual case, a final agency action with respect to SPLC's client-detainees' due process claims has not occurred. Nor does the APA provide a valid cause of action where—as here—the statutory scheme precludes judicial review through its "express language . . . the structure of the statutory scheme, its objectives, its legislative history, [or] the nature of the administrative action involved." *Joorabi v. Pompeo*, No. 1:20-CV-108-RCL, 2020 WL 2527209, at *5 (D.D.C. May 17, 2020) (citation omitted); *see* 5 U.S.C. § 701(a)(1). Section 1252(b)(9) is, therefore, the sole and exclusive avenue for judicial review of claims arising from actions taken to remove detainees.

Because this Court lacks subject-matter jurisdiction, this Court should grant Defendants' Partial Motion to Dismiss SPLC's Claims Nos. 1, 2, 3, 5, and 6.[1]

**LEGAL STANDARD**

If the court determines at any time that it lacks subject-matter jurisdiction," it "must dismiss the action." Fed. R. Civ. P. 12(h)(3). Rule 12(h)(3) "merely clarifies that lack of subject matter jurisdiction is a defense that is never waived and that, if such jurisdiction is lacking, the appropriate disposition is dismissal." *Harbury v. Hayden*, 444 F. Supp. 2d 19, 26 (D.D.C. 2006), *aff'd*, 522 F.3d 413 (D.C. Cir. 2008). "Parties cannot waive subject matter jurisdiction by their conduct or confer it . . . by consent, and the absence of such jurisdiction can be raised at any

---

[1] At this time, Defendants do not seek dismissal on SPLC's sole remaining claim, Claim No. 4, concerning its First Amendment claims.

time." *Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1121 (D.C. Cir. 2010); *e.g., Euclid Street, LLC v. District of Columbia Water and Sewer Authority*, 41 A.3d 453, 457 n.2 (D.C. Cir. 2012) ("[T]he court's lack of subject-matter jurisdiction cannot be waived."). "The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised at any stage in the litigation, even after trial and the entry of judgment, Rule 12(h)(3)." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." *Berkshire Fashions, Inc. v. M.V. Hakusan III*, 954 F.2d 874, 879 n.3 (3d Cir. 1992).

When faced with a Rule 12(h)(3) motion, a court should treat the motion as a traditional Rule 12(b)(1) motion for lack of subject-matter jurisdiction. *Murray v. Amalgamated Transit Union*, 206 F. Supp. 3d 202, 207 (D.D.C.), *amended in part*, 220 F. Supp. 3d 72 (D.D.C. 2016), and *aff'd*, 719 F. App'x 5 (D.C. Cir. 2018) (citing *Haase v. Sessions,* 835 F.2d 902, 905–06 (D.C. Cir. 1987); *see Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986); *see also United States ex rel. El–Amin v. George Washington Univ.,* No. Civ. A 95–2000(JGP), 2005 WL 485971, at *3 (D.D.C. Feb. 25, 2005); *see, e.g.*, *Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983) (converting a post-answer Rule 12(b)(1) motion into a Rule 12(h)(3) motion because "[t]he matter of subject matter jurisdiction . . . may be raised by the parties at any time").

In a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court may appropriately dispose of a case under Rule 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for*

*Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."). Further, within this Circuit, prudential standing is a jurisdictional issue. *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1357 (D.C. Cir. 2000) ("we treat prudential standing as akin to jurisdiction") (citations omitted).

At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, however, "it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence." *Harbury*, 444 F. Supp. 2d at 26–27; *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

## BACKGROUND

ICE is the component of DHS charged with the enforcement of the United States' immigration laws. *See* SAC ¶ 22; Answer to Second Amended Complaint ("Ans.") ¶ 22. Enforcement and Removal Operations ("ERO"), which is an organization within ICE, enforces those immigration laws. SAC. ¶ 22, Ans. ¶ 22. ICE is responsible for the issuance and enforcement of immigrant detention standards that apply to all immigration detention centers: monitoring compliance with those standards through inspections, investigations and onsite supervision, and negotiating, developing, and executing the contracts that designate physical structures for the detention of immigrants that comply with those standards and other applicable law. *See* SAC ¶ 302; Ans. ¶ 302. The detention facilities at issue here are Stewart Detention Center ("Stewart"), Irwin Detention Center ("Irwin"), LaSalle ICE Processing Center

("LaSalle"), and Pine Prairie ICE Processing Center ("Pine Prairie") (collectively, the "Facilities"). SAC ¶¶ 49, 58, 65, 72. Stewart is in Lumpkin, Georgia; Irwin is in Ocilla, Georgia; Pine Prairie is in Pine Prairie, Louisiana; and LaSalle is in Jena, Louisiana. SAC ¶¶ 49, 58, 65, 72; Ans. ¶¶ 49, 58, 65, 72. Detainees at the Facilities are subject to removal proceedings. *See* SAC ¶¶ 51, 59, 66, 75; Ans. ¶¶ 51, 59, 66, 75.

ICE's Performance Based National Detention Standards ("PBNDS") provides program operations and management expectations within ICE's detention system.[2] The PBNDS applies to Service Processing Centers ("SPCs"), Contract Detention Facilities ("CDFs"), and state or local government facilities used by ERO through Intergovernmental Service Agreements ("IGSAs"). Generally, in contracts post-dating the creation of the PBNDS, the PBNDS are incorporated by reference into the IGSAs with the individual facilities.[3] The 2011 PBNDS applies to Stewart, LaSalle, and Pine Prairie. Ans. ¶ 350; *see* SAC ¶ 350. The 2000 National Detention Standards apply to Irwin, which voluntarily complies with the 2008 PBNDS. Ans. ¶ 350; *see* SAC ¶ 350.

Section 5.7 of the PBNDS provides measured standards for overall visitation within detention centers, and delineates guidelines for family, legal, and consular visits. *See* 2008, 2011 PBNDS Preface, § 5.7. Section 5.7(J) provides guidance to facilities for visits by legal representatives and legal assistants. *Id.* § 5.7(J). This guidance includes, *inter alia*, maintaining confidentiality during legal visits, scheduling notification procedures for legal visits, and attorney documentation guidelines. *Id.*

---

[2] *ICE Detention Standards*, U.S. Immigration & Customs Enforcement (February 24, 2012), https://www.ice.gov/factsheets/facilities-pbnds.

[3] ICE utilizes three sets of standards: the 2000 National Detention Standards, the 2008 PBNDS, and the 2011 PBNDS. Ans. ¶ 350; *Detention Management*, U.S. Immigration & Customs Enforcement (May 7, 2020), https://www.ice.gov/detention-management. All three versions are publicly available on ICE's website.

SPLC is a legal advocacy organization that represents immigrant detainees at the Facilities. *See* SAC ¶¶ 14, 16; Ans. ¶¶ 14, 16. SPLC began its on-the-ground operations at the Facilities *vis-à-vis* its volunteer component, Southeastern Immigrant Freedom Initiative ("SIFI"), in April 2017 at Stewart, August 2017 at Irwin, September 2017 at LaSalle, and October 2018 at Pine Prairie. SAC ¶ 98. SIFI is on the legal referral list at the Facilities, and SIFI attorneys represent clients detained at the Facilities. SAC ¶ 98; Ans. ¶ 98. Through SIFI, SPLC "endeavors to provide effective and ethical removal defense to all their detained clients." SAC ¶ 102.

SPLC filed its initial Complaint on April 4, 2018, where it sought relief on behalf of detainees at Stewart, Irwin, and LaSalle. ECF No. 1. On May 4, 2018, SPLC filed a Motion for Preliminary Injunction, seeking emergency relief on behalf of detainees at LaSalle. ECF No. 32. The Parties entered into a settlement agreement in September 2018 to resolve the Preliminary Injunction motion. ECF No. 42. There, Defendants implemented structural and procedural changes related to access to counsel at LaSalle. *Id.* On September 26, 2018, Defendants filed a Motion to Sever and Transfer Venue. ECF No. 47. Defendants argued that the claims at Stewart, Irwin, and LaSalle do not arise out of the same transaction or occurrence, that the Court should sever the case into three facility-specific lawsuits, and that the Court should transfer the claims to the appropriate districts in which the three facilities are located (Middle District of Georgia and Western District of Louisiana). *Id.* On October 31, 2018, SPLC filed its First Amended Complaint, adding allegations from Stewart, Irwin, and LaSalle. ECF No. 48. On May 10, 2019, this Court denied Defendants' Motion to Sever and Transfer Venue. ECF No. 62.

SPLC filed its SAC on August 28, 2019. ECF No. 70. SPLC seeks relief on six causes of action: four claims on behalf of its client-detainee's Fifth Amendment due process rights (Claim Nos. 1, 2, 3, and 5), one claim on behalf of its own First Amendment rights (Claim No. 4), and

one claim on behalf of itself and its client-detainees pursuant to the Administrative Procedure Act (Claim No. 6). *Id.* SPLC relies upon, *inter alia*, allegations that the remoteness of the facilities, restrictions on attorney-client visitation hours, delays in attorney access attributed to detainee counts or guard shift changes, and lack of contact visitation frustrate SPLC's client-detainees' constitutional rights and fairness of removal proceedings.  SPLC further alleges the same with prohibitive security protocols for attorneys, paralegals, legal assistants, and SIFI volunteers when entering the Facilities. SAC ¶¶ 135-256, 322. These policies, practices, and omissions, says SPLC, create substantial barriers to SPLC's efforts to provide effective and ethical representation to their clients. *See* SAC ¶ 338. SPLC alleges various barriers to its ability to meet with its clients detained at the Facilities, such as a lack of confidentiality in attorney access rooms, inadequate numbers of attorney visitation rooms, phone banks, video-telecommunication ("VTC") modules, and lack of interpretation services to seek relief. *See* SAC ¶ 322. SPLC alleges that ICE has also failed to enforce its own access to counsel standards in accordance with ICE's PBNDS and its relevant access to counsel provisions. *See* SAC ¶¶ 288-315; *see also* 2008, 2011 PBNDS § 5.7.

According to SPLC, Defendants' purported operational choices adversely affect the fairness of removal proceedings. SAC ¶ 318 (arguing "Plaintiff's clients require meaningful access to Plaintiff in order to seek release on both bond and parole and to defend themselves against removal from the United States—the very reason that they are detained at these immigration prisons."); SAC ¶ 331 (alleging Defendants' "conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and fair hearing will be violated, because Defendants' policies and practices severely restrict the ability of Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in connection with their removal

proceedings."); SAC ¶ 333 (asserting "All of the obstacles to accessing and communicating with counsel described herein create a substantial risk that errors will occur in bond and removal proceedings. . . ."). SPLC seeks declaratory and injunctive relief on behalf of itself (SPLC and SIFI, its volunteer component) and its client-detainees under the Fifth Amendment and the APA, 5 U.S.C. § 706. SAC at 86-87. SPLC also seeks declaratory and injunctive relief on behalf of itself under the First Amendment. Defendants answered the SAC on October 16, 2019. ECF No. 80.

Additionally, during the COVID-19 pandemic, SPLC moved for a Temporary Restraining Order asserting that Defendants' response to the public health crisis also hindered access to counsel and courts at the Facilities. ECF No. 105; *see* Proposed Order at ECF No. 105-11. Defendant objected to the request asserting that SPLC lacks standing and the Court lacks subject matter jurisdiction pursuant to 8 U.S.C. § 1252(a)(5), (b)(9), among other matters. ECF No. 112. On June 2, 2020, Defendants filed a Motion to Partially Dismiss the SAC pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction, in addition to raising standing challenges and jurisdictional arguments under 8 U.S.C. §§ 1252(b)(9), 1252(a)(5), Defendants raised subject matter jurisdiction arguments under 8 U.S.C. §§ 1226(a), 1226(e), 1252(a)(2)(B)(ii), 1231(g), and the APA. ECF No. 117.

On June 17, 2020, this Court granted in part and denied in part SPLC's Temporary Restraining Order. ECF No. 123. In its Memorandum Opinion, the Court decided in favor of SPLC's standing and jurisdictional arguments "on the basis of Plaintiff's substantive due process claim" in the context of conditions of confinement related to ICE's COVID-19 response. *See* Mem. Op., ECF No. 124 at 31. The Court explicitly "d[id] not address" SPLC's "separate arguments focusing on its clients' access to counsel claims pursuant to the Fifth Amendment."

*Id.* at 22, 31-32. That same day, the Court denied, without prejudice, Defendants' Motion to Partially Dismiss the SAC "because it appeared to raise some of the same issues as the [pending TRO]." *See* Minute Order of June 17, 2020.

## ARGUMENT

### I. THE INA CATEGORICALLY BARS THIS COURT'S REVIEW OF SPLC'S CLAIMS SEEKING RELIEF ON BEHALF OF ITS CLIENT-DETAINEES

#### A. SPLC's access-to-counsel allegations are inextricably intertwined with its client-detainees' removal proceedings and barred from review per section 1252(b)(9).

This Court cannot review SPLC's claims, nor grant the relief SPLC seeks, because it lacks subject-matter jurisdiction. Whether Defendants' operational choices adversely affect the fairness of removal proceedings is a question arising from the removal proceedings themselves and is entirely addressable within the context of administrative proceedings and petition for review to the court of appeals. SPLC's allegations regarding frustration of their clients' access or right to counsel (and any resulting interference on the work of SPLC) affecting the fairness of removal proceedings is part and parcel of the removal proceeding. These claims "arise from" SPLC's client-detainees' immigration removal proceedings, and 8 U.S.C. § 1252(b)(9) bars judicial review by the district court.

The INA provides that "a petition for review [PFR] filed with an appropriate court of appeals in accordance with [8 U.S.C. § 1252] shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The same section permits "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . *only* in judicial review of a final order." *Id.* § 1252(b)(9) (emphasis added). Through § 1252, "Congress has clearly provided that all claims—whether statutory or

constitutional—that 'aris[e] from' immigration removal proceedings can only be brought through the petition for review process in federal courts of appeals." *J.E.F.M.*, 837 F.3d at 1029. Taken together, "§ 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR process." *Id.* at 1031 (emphasis in original); *e.g.*, *NIPNLG*, 2020 WL 2026971 at *8–9 ("Plaintiff's access-to-counsel and due process claims arise as a 'part of the process by which . . . removability will be determined.'") (citation omitted); *see also Jennings*, 138 S. Ct. at 841 (§ 1252(b)(9) is a "jurisdiction bar" to challenges to "any part of the process by which [an alien's] removability will be determined"); *id*. at 841 n.3 ("[t]he question is not whether [the *challenged action*] is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action") (emphases in original)).

Section 1252(b)(9)'s channeling provisions are "breathtaking" in scope and "vise-like" in grip, swallowing up "virtually all claims that are tied to removal proceedings." *J.E.F.M.*, 837 F.3d at 1031 (quoting *Aguilar v. U.S. Immigration and Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007)). These channeling provisions include "right-to-counsel claims" and "challenges to agency policies." *Id.* at 1035. As a result, any challenge arising from any aspect of the processes or practices that apply to aliens in immigration proceedings are barred from the district court's review. *See Vetcher v. Sessions*, 316 F. Supp. 3d 70, 76 (D.D.C. 2018). The only exception to this jurisdictional bar that has been recognized in this Circuit is if a plaintiff challenges "the validity of a regulation of general applicability based on the administrative record generated in rulemaking." *O.A. v. Trump*, 404 F. Supp. 3d 109, 128 (D.D.C. 2019). Further, in *Jennings*, the Supreme Court recognized habeas jurisdiction to challenge the constitutionality of prolonged immigration detention claims notwithstanding the

statutory restriction. *Jennings*, 138 S. Ct. 830. But that is not the sort of challenge SPLC brings here, nor does this Court have jurisdiction to consider the habeas claims of detainees in Facilities in Georgia and Louisiana. 28 U.S.C. § 2241 ("Writs of habeas corpus may be granted by…the district courts and any circuit judge within their respective jurisdiction); *accord Harris v. United States*, 148 F. Supp. 3d 1, 1 (D.D.C. 2015) (finding that the U.S. District Court for District of Columbia lacked jurisdiction to grant habeas relief from Maryland conviction of petitioner who was currently incarcerated at a federal prison South Carolina).

In contrast, SPLC's vast access–to-counsel allegations stem from purported barriers to their client-detainees' right to counsel in connection with removal proceedings that interferes with SPLC's interests in serving its clients. Thus, by any realistic measure, SPLC's allegations regarding frustration of their clients' access or right to counsel (and any resulting interference on the work of SPLC) affecting the fairness of removal proceeding is part and parcel of the removal proceeding itself. *See* 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge … the person concerned shall have the privilege of being represented by such counsel. . . ."); *Skurtu v. Mukasey*, 552 F.3d 651, 658 (8th Cir. 2008) (right-to-counsel claim must be brought through a petition for review because the claim is a "direct result of the removal proceedings"); *Aguilar*, 510 F.3d at 13 ("subject to the channeling effect of section 1252(b)(9), petitioners' right-to-counsel claims must be administratively exhausted."). So viewed, SPLC's claims are directly linked to, and are intertwined with, the administrative process that Congress so painstakingly fashioned. *Aguilar*, 510 F.3d at 13; s*ee also Michel v. INS,* 206 F.3d 253, 258 (2d Cir. 2000); *Batanic v. INS,* 12 F.3d 662, 667 (7th Cir. 1993); *Rios–Berrios v. INS,* 776 F.2d 859, 862–64 (9th Cir. 1985).

The Supreme Court's analysis of section 1252(b)(9) in *Jennings* establishes that this Court lacks jurisdiction to review SPLC's access to counsel claims on behalf of its client-detainees. *Jennings,* 138 S. Ct. at 841. The *Jennings* plaintiffs sought a writ of habeas corpus and declaratory and injunctive relief concerning pre-order immigration detention of more than six months without a bond hearing. *Id.* at 838–39. They asserted constitutional and statutory claims requiring individualized bond hearings. *Id.* at 841. The Supreme Court held that the jurisdictional bar at § 1252(b)(9) did not apply because plaintiffs challenged the extent of detention authority and, "[i]f that challenge fails, [plaintiffs] are then contesting the constitutionality of the entire statutory scheme under the Fifth Amendment." *Id.* Thus, because the extent of the government's detention authority is not a matter of "discretionary judgment," "action," or "decision," the Supreme Court had no difficulty concluding "the statutory framework that permits [plaintiffs] detention without bail," falls outside of the scope of the INA's jurisdictional bars. *Id.*

Here, unlike *Jennings*, SPLC does not challenge the extent of Defendants' authority or any statutory or regulatory framework as a whole. *Compare Jennings*, 138 S. Ct. at 841 (holding respondents are "challenging the extent of the Government's detention authority under the 'statutory framework' as a whole"), *with* SAC ¶¶ 316–35, 341–59 (challenging specific aspects of SPLC's clients' detention). Rather, SPLC broadly challenges Defendants' operational choices regarding access-to-counsel capabilities that adversely impact the fairness of removal proceedings. *See* SAC n. 1, ¶ 96 (discussing the impact access to counsel has on release on bond and ultimate success in removal proceedings); SAC ¶ 318 (arguing "Plaintiff's clients require meaningful access to Plaintiff in order to seek release on both bond and parole and to defend themselves against removal from the United States—the very reason that they are detained at these immigration prisons."); SAC ¶ 331 (alleging Defendants' "conduct creates a substantial

likelihood that Plaintiff's clients' rights to a full and fair hearing will be violated, because Defendants' policies and practices severely restrict the ability of Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in connection with their removal proceedings."); SAC ¶ 333 (asserting "All of the obstacles to accessing and communicating with counsel described herein create a substantial risk that errors will occur in bond and removal proceedings. . . ."). SPLC advances generalized fairness claims to avoid a direct challenge to action taken in any *specific* removal proceeding. These claims, however, must be funneled through the administrative process and reviewed by the Court of Appeals in a PFR. 8 U.S.C. § 1252(a)(5), (b)(9).

The First Circuit has reached this same conclusion. In *Aguilar v. ICE, et al.*, the First Circuit affirmed dismissal of similar access to counsel claims that arose from nonimmigrants' removal proceedings. *Aguilar*, 510 F.3d 1. The detained *Aguilar* plaintiffs claimed that their detention conditions and subsequent transfer by the government infringed upon their right to counsel by barring their access to lawyers, interfering with preexisting attorney-client relationships, and alleging difficulty to secure their choice of counsel. *Id.* at 9. But, the First Circuit determined that plaintiffs could not skirt the section 1252(b)(9) statutory bar by lumping together "a mélange of claims associated with removal, each of which would be jurisdictionally barred if brought alone, and eschewing a direct challenge to any particular removal proceeding." *Id.* at 9–10. Indeed, the *Aguilar* court found "such claim-splitting—pursuing selected arguments in the district court and leaving others for adjudication in the immigration court—heralds an obvious loss of efficiency and bifurcation of review mechanisms." *Id.* at 9–10 (noting that these are the very "evils" that Congress sought to avoid through the passage of section 1252(b)(9)) (citing H.R. Rep. No. 109-72, at 174). Thus, the First Circuit held the *Aguilar* plaintiffs' access-

to-counsel allegations, such as inability to choose specific counsel, could not be separated as a distinct claim from the removal proceeding itself. *Id.* at 9.

As in *Aguilar*, the access to counsel deficiencies alleged by SPLC are "inextricably intertwined" with their clients' removal proceedings. SPLC does not allege its detained clients are not in removal proceedings. *See* SAC. Nor does SPLC allege the purported barriers to access to counsel do not impinge upon removal proceedings and outcomes. To the contrary, SPLC repeatedly asserts the significance of the purported barriers—even with regard to parole and bond— *is* their negative affect on removal proceedings. *See* SAC n. 1, ¶ 96 (discussing the impact access to counsel has on release on bond and ultimate success in removal proceedings); SAC ¶ 318 (arguing "Plaintiff's clients require meaningful access to Plaintiff in order to seek release on both bond and parole and to defend themselves against removal from the United States—the very reason that they are detained at these immigration prisons."). Thus, it is impossible to separate the attorney-client visitation meeting at the Facilities from the removal proceeding because the removal proceeding is the reason for the attorney-client visitation and, indeed, the reason for the attorney-client relationship itself. *See* SAC ¶ 102 ("Through SIFI, Plaintiff endeavors to provide effective and ethical removal defense to all their detained clients."); SAC ¶ 116 (contending "The right to counsel is a crucial procedural safeguard for detained noncitizens seeking release on bond or parole given the high stakes in immigration cases . . . ."); SAC ¶ 318 (arguing "Plaintiff's clients require meaningful access to Plaintiff in order to seek release on both bond and parole and to defend themselves against removal from the United States—the very reason that they are detained at these immigration prisons."); SAC ¶ 331 (alleging Defendants' "conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and fair hearing will be violated, because Defendants' policies and practices severely restrict

the ability of Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in connection with their removal proceedings."); SAC ¶ 333 (asserting "All of the obstacles to accessing and communicating with counsel described herein create a substantial risk that errors will occur in bond and removal proceedings. . . ."). In sum, the purported access to counsel barriers alleged in the SAC are of no moment if not for the alleged adverse effect on the removal proceedings of detainees.

SPLC's access to counsel claims are even more attenuated than in *Aguilar*. If the *Aguilar* plaintiff-detainees' direct access to counsel claims, such as an inability to choose specific counsel, are barred by section 1252(b)(9), then surely SPLC's third-party attempt to seek similar relief on behalf of its client-detainees is jurisdictionally barred as well. As pled in the SAC, SPLC's claims on behalf of detainees are fused with challenges to the fairness of removal proceedings and are barred from review per section 1252(b)(9). *See Aguilar*, 510 F.3d at 13 ("[A]n alien's right to counsel possesses a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned.").

Furthermore, "merely conglomerating individual claims," as SPLC attempts to do in its ninety-two-page SAC collecting allegations from four separate detention centers in two states, "and posturing the conglomeration as a pattern and practice claim does not have talismanic effects." *See Aguilar* 510 F.3d at 13. Any challenge based on the deprivation of that right, "however it is framed," is reviewable only as part of the review of a final removal order. *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048 (N.D. Cal. 2018) ("Petitioners' challenge based on the potential loss of counsel 'arises from' their removal proceedings and can only be raised through the PFR process, as required by § 1252(a)(5) and § 1252(b)(9).").

*J.E.F.M. v. Lynch*, further supports dismissal of SPLC's claims. *J.E.F.M.*, 837 F.3d at 1029–30. In *J.E.F.M.*, the Ninth Circuit affirmed dismissal of claims brought by juvenile aliens who asserted a constitutional right to have attorneys appointed to represent them at government expense in connection with their removal proceedings. *Id.* The *J.E.F.M.* plaintiffs acknowledged that a nonimmigrant placed in removal proceedings can challenge those proceedings *only* after exhausting administrative remedies by filing a petition for review in a court of appeals. *Id.* at 1030, 1033.  By seeking exception to the 1252(b)(9) jurisdictional bar, the *J.E.F.M.* plaintiffs argued that juveniles cannot effectively raise right-to-counsel claims given the complex nature of removal proceedings, and they would be denied meaningful judicial review if the district court lacked jurisdiction. The Ninth Circuit rejected the *J.E.F.M.* plaintiffs' claims holding the access to counsel claims "arise from" their removal proceedings, regardless of the complex nature of removal proceedings, and section 1252(b)(9) provides the exclusive avenue for judicial review. *Id.* at 1038.

Like the *J.E.F.M.* plaintiffs, who sought an exception to the 1252(b)(9) jurisdictional bar due to purported barriers to access to counsel, SPLC seeks relief on behalf of its client-detainees by alleging barriers to access to counsel such as the remoteness of the Facilities and an inability to access interpretation services. *See, e.g.*, SAC ¶¶ 8, 126, 146, 322. As in *J.E.F.M.*, SPLC's access to counsel claims, however, are not independent or ancillary to removal proceedings. Both the *J.E.F.M.* plaintiffs' claims and SPLC's claims here arise from the very removal proceedings from which they both request relief. *See generally Aguilar*, 510 F.3d at 18 (claims involving "difficulties in calling witnesses and in presenting evidence at the removal proceedings," are subject to § 1252(b)(9)); *Alvarez*, 338 F. Supp. 3d at 1048 ("Petitioners' challenge based on the potential loss of counsel 'arises from' their removal proceedings and can only be raised through

the PFR process, as required by § 1252(a)(5) and § 1252(b)(9).”). Accordingly, review must be channeled through the administrative process and the Court of Appeals via PFR.

The frequency with which right-to-counsel claims arise in removal proceedings refutes any notion that such claims are sufficiently separate from removal proceedings to be considered either “independent” or “collateral.” As the First Circuit emphasized in *Aguilar*, 510 F.3d 1, 13–14, “[c]hallenges to removal orders premised on the government’s putative violation of an alien’s right to counsel are commonplace, and such claims are often featured in petitions for judicial review of removal orders.” (Citations omitted). Ultimately, allowing SPLC to ignore the channeling provisions of section 1252(b)(9) and bring right-to-counsel claims directly in the district court would result in precisely the type of fragmented litigation that Congress sought to forbid. *Id.* at 14.

Indeed, the allegations here—that barriers to access to counsel impact the fairness of pending removal proceedings—are not of the type of claims traditionally regarded as ancillary to removal proceedings that might escape the jurisdictional limiting provisions of the INA. For example, in *Singh v. Gonzales*, 499 F.3d 969, 980 (9th Cir. 2007), the Ninth Circuit determined that the district court had jurisdiction over the petitioner’s ineffective-assistance-of-counsel claim that arose after his attorney failed to file a timely PFR where the petitioner had no recourse in administrative proceedings. *Id.* The Ninth Circuit, however, did not allow Singh to raise a different ineffective-assistance-of-counsel claim that arose *before* a final order of removal entered and that could and should have been brought before the agency. *Id.* at 974; *see Skurtu*, 552 F.3d at 658 (distinguishing *Singh* and holding that a right-to-counsel claim must be brought through the PFR process because the claim is a “direct result of the removal proceedings”). As a result, SPLC’s myriad allegations on behalf of their clients in removal proceedings are neither

remote nor tangential and are similarly barred. SAC ¶¶ 89-96, 116, 330-33; *see Aguilar*, 510 F.3d at 11 (reading "arising from" to "exclude claims that are independent of, or wholly collateral to, the removal process.").

Persuasively, Judge Nichols of this Court recently decided that district courts lack jurisdiction to hear challenges related to the adequacy of representation based on detention facility or immigration court policies for detainees in removal proceedings. *See NIPNLG*, 2020 WL 2026971. The *NIPNLG* plaintiffs alleged that the government's efforts in response to the COVID-19 pandemic deprived their clients detained at ICE facilities their due process right to counsel. *Id.* at *1, 4. Specifically, plaintiffs argued that the government restricted their clients' ability to meet in-person with attorneys, or schedule phone/VTC remote attorney-client meetings. *Id.* at *4; *cf.* SAC ¶¶ 147–48, 174 (alleging deficiencies to both in-person attorney-visitation meetings and "insufficient" availability of call-in times for phone and VTC). Judge Nichols found that these alleged barriers to access-to-counsel fall squarely within 1252(b)(9)'s jurisdictional bar. *NIPNLG*, 2020 WL 2026971, at *4. The *NIPNLG* plaintiffs' access to counsel claims, opined Judge Nichols, arise as a "part of the process by which…removability will be determined…and this Court thus lacks jurisdiction over them." *Id.* at *4-8, (citing *Jennings*, 138 S. Ct. at 841). As in *NIPNLG*, SPLC's access to counsel claims on behalf of its client-detainees are jurisdictionally barred.

The Third Circuit's recent decision in *E.O.H.C v. Secretary United States Department of Homeland Security*, 950 F.3d 177 (3rd Cir. 2020), is factually and legally distinguishable. In *E.O.H.C.*, appellants sought review of their constitutional and statutory access-to-counsel claims pursuant to their interim return to Mexico under the Migrant Protection Protocols ("MPP"). *E.O.H.C.*, 930 F.3d at 181-82. Because appellants' claims arose from their interim removal to

Mexico, not their final removal to Guatemala, their access to counsel claims did not fall under 1252(b)(9)'s jurisdictional bar. *Id.* at 186. The Third Circuit, thus, regarded the issue as presenting "now-or-never" claims, that is, if a detainee cannot bring forth their claim now, they are unable to do so later, and thus not barred by 1252(b)(9). *Id.* at 185-86. Notably, the Court nevertheless held that one of the appellants' claims, involving the statutory right to counsel, arises from the proceedings to remove appellants to Guatemala, "so it can await a petition for review." *Id.* at 180.

Here, unlike the *E.O.H.C.* appellants, SPLC's client-detainees do not seek relief pursuant to the MPP or its specific *interim* removal procedures. Further, central to the Third Circuit's determination that 1252(b)(9) poses no jurisdictional bar to review of the MPP was that a detainee cannot meaningfully obtain review within removal proceedings. *Id.* at 185-86. That fact is completely missing from SPLC's access-to-counsel claims where section 1252(b)(9) is designed to channel access-to-counsel claims effectively through the PFR process—as every court of appeals to consider the issue has held. *See id.* (citing *Aguilar*, 510 F.3d at 11); *J.E.F.M.*, 837 F.3d at 1029–30.

Finally, inconsistent district court decisions from within the Ninth Circuit are inapposite. For instance, in *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1159 (D. Or. 2018), the district court emphasized that 8 U.S.C. § 1252(b)(9) only applies to removal proceedings and the detainees in that matter were not in removal proceedings and had not been served with Notices to Appear. *Id. Innovation Law Lab* is, thus, factually distinguishable because all detainees at the facilities that SPLC represents are in removal proceedings, and the SAC repeatedly contends the fairness of removal proceedings are affected by Defendants' operational choices. SAC ¶ 331 ("Defendants' conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and

fair hearing will be violated, because Defendants' policies and practices severely restrict the ability of Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in connection with their removal proceedings.").

Similarly, reliance on *Arroyo v. DHS*, No. 19-cv-815, 2019 WL 2912848, at *12 (C.D. Cal. June 20, 2019), is misplaced. In *Arroyo*, a district court held *J.E.F.M.* is distinguishable when the plaintiff claims that a detainee transfer interferes with an existing attorney-client relationship. *Arroyo*, 2019 WL 2912848, at *12–13. The court reasoned that "an established attorney-client relationship carries with it certain rights separate from and additional to their rights in removal proceedings." *Id.* at *13. The *Arroyo* court, however, held that claims of aliens regarding interference with prospective attorney-client relationships were jurisdictionally barred. *Id.* As explained in *Avilez v. Barr*, No. 2020 WL 570987, at *3 (N.D. Cal. Feb. 5, 2020), *Arroyo's* holding is "difficult to reconcile with the broad language of *J.E.F.M.*" The *Avilez* court found the distinction *Arroyo* draws is unpersuasive because "[i]f an established attorney-client relationship carries rights unrelated to removal proceedings, it seems that would be true of *prospective* attorney-client relationships as well." *Avilez*, 2020 WL 570987, at *3 (N.D. Cal. Feb. 5, 2020) (emphasis in original). Accordingly, the *Avilez* court followed the decision in *Alvarez*, 338 F. Supp. 3d at 1048, holding—consistent with *J.E.F.M.*, 837 F.3d at 1029–30—that "[p]etitioners' challenge based on the potential loss of counsel 'arises from' their removal proceedings and can only be raised through the PFR process, as required by § 1252(a)(5) and § 1252(b)(9)." Thus, *Avilez* does not enjoy even persuasive authority status within the lower courts of the Ninth Circuit and is not binding on this Court or any court. *Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a

different case."); *Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Sessions*, 344 F. Supp. 3d 1, 15 (D.D.C. 2018) (same). Consequently, to the extent the Court looks to decisions of the Ninth Circuit for persuasive value, it should look to the precedential decision in *J.E.F.M.*, 837 F.3d at 1029–30, which applied the jurisdictional bar and dismissed claims similar to those raised here.[4]

### B. SPLC incorrectly characterizes this action as a "conditions of confinement" lawsuit in order to create subject matter jurisdiction.

The Court should dismiss Plaintiff's Fifth claim for relief based on substantive due process violations that are identical to their access to counsel claims. SAC ¶¶ 341-47. As a general rule, outside of removal proceedings, federal prisoners can challenge their conditions of confinement only in civil rights actions, asserting that their treatment while in custody renders that custody illegal—claims that state and federal prisoners might typically raise in federal court pursuant to constitutional habeas, 42 U.S.C. § 1983, and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See Aamer v. Obama*, 742 F.3d 1023, 1030 (D.C. Cir. 2014); *Hatim v. Obama*, 760 F.3d 54 (D.C. Cir. 2014). Here—without filing a habeas or *Bivens* action—SPLC merely uses the phrase "conditions of confinement" in various sections of the SAC, untied to any specific allegation in order to circumvent the INA's jurisdictional bars. For example, SPLC alleges "Defendants' policies, procedures, and practices govern the selection of [facility] as an immigration prison and the terms of the contracts pursuant to which it operates; the placement of ICE detainees at that prison and which detainees are selected for placement there; the conditions of confinement that they endure . . . ." SAC ¶¶ 55, 62, 68, 74; *e.g.*, *id.* ¶ 257 ("Defendants direct, manage, and control the U.S. immigrant detention system and the conditions of confinement

---

[4] Because SPLC does not raise any allegations in the SAC concerning their vague access to court claim that are unique or different from their access to counsel claim, that claim is similarly barred from review pursuant to the sections 1226(e), 1252(a), (b)(9), and 1231(g)(1).

therein, including at LaSalle, Irwin, Pine Prairie, and Stewart."); *id.* ¶ 288 ("The purpose of

ICE's detention standards was to establish 'consistent conditions of confinement, access to legal

representation, and safe and secure operations across the detention system."). SPLC, however,

does not tie this unbridled and amorphous phrasing to the specific access to counsel allegations

in the SAC. Rather, SPLC has posited this matter to the Court as a "conditions of confinement"

lawsuit by incorrectly relying on its boundless phrasing to skirt the 1252(b)(9) statutory bar.

SAC ¶¶ 4, 132, 257, 342-45; ECF No. 105 at 1, 2, 7 (arguing "unconstitutional conditions of

confinement that impede access to counsel."); *id.* at 14 (asserting "SPLC challenges *conditions*

of confinement that, in their totality, impede meaningful and reliable access to attorneys")

(emphasis in original). SPLC cannot dress a challenge to immigration proceedings as a

conditions claim to fashion subject matter jurisdiction. *Aguilar*, 510 F.3d at 9.

In *Jennings*, Justice Alito articulated that the touchstone for determining whether section

1252(b)(9) applies to a claim turns on whether the legal questions presented "'aris[e] from' the

actions taken to remove these aliens." *Jennings*, 138 S. Ct. at 840. Justice Alito noted that courts

should take care not to adopt such an expansive interpretation of § 1252(b)(9) that a detained

alien's claim under *Bivens*, based on allegedly inhumane conditions of confinement, or a tort

claim, for a car accident while being transported, would be barred. *Id.* Such a broad reading of

section 1252 would swallow claims related to removal proceedings only by happenstance and

would be "absurd." *Jennings*, 138 S. Ct. at 840; *see also Aguilar*, 510 F.3d at 10 ("Courts

consistently have recognized that the term 'arising from' requires more than a weak or tenuous

connection to a triggering event."). Here, however, the claims raised by SPLC are categorically

not of the tangential type discussed by Justice Alito. *See* SAC ¶ 331 (alleging Defendants'

"conduct creates a substantial likelihood that Plaintiff's clients' rights to a full and fair hearing

will be violated, because Defendants' policies and practices severely restrict the ability of

Plaintiff to communicate with its clients and to conduct necessary legal work on their behalf in

connection with their removal proceedings."); SAC ¶ 333 (asserting "All of the obstacles to

accessing and communicating with counsel described herein create a substantial risk that errors

will occur in bond and removal proceedings . . . ."). SPLC specifically claims that the alleged

barriers to access to counsel harm the fairness of removal proceeding. SAC ¶¶ 2, 89, 96

(asserting purported barriers reduce the likelihood detainees will be released from detention and

prevail in removal proceedings). Thus, unlike the disassociated *Bivens* or tort accident claims

discussed by Justice Alito, SPLC's claims are undoubtedly "part and parcel" of removal

proceedings. *Jennings*, 138 S. Ct. at 840. Notably, in claim No. 5, Plaintiff *only* alleges that

restrictions to access to counsel create unconstitutional conditions of confinement. SAC ¶¶ 341-

47. Plaintiff simply does not allege any conditions of confinement that are not focused on its

clients' access to counsel claims.  *Id.*; *see* ¶ 345 ("At each facility, Defendants' policies and

practices obstruct civil detainees from accessing and communicating with attorneys in a manner

that is equivalent to or even more restrictive than conditions imposed upon criminal detainees in

jails and prisons."). Because the district court has jurisdiction only where plaintiffs ". . . are not

challenging any part of the process by which their removability will be determined," section

1252(b)(9) bars review of SPLC's claims, and the Court should reject Plaintiff's attempt to dress

statutorily barred access to counsel claims in conditions of confinement garb.[5] *Jennings*, 138 S.

Ct. at 841.

---

[5] Defendants, in contrast, do not herein challenge the district court's determination that it has
jurisdiction in context of the preliminary injunction to consider "whether the conditions imposed
as a result of the limitations and restrictions adopted due to COVID-19 are punitive, in part
because they result in limited access to counsel."  ECF No. 124 at 36-37.

*Torres v. U.S. Dep't of Homeland Security*, 411 F. Supp. 3d 1036, 1045 (C.D. Cal 2019), is inapposite.  In *Torres*, a putative class of detainees alleged ICE's failure to promulgate the PBNDS as it relates to legal visitation inhibited their ability to access counsel. *Id.* Emphasizing that plaintiff detainees alleged representation interference in legal matters beyond immigration proceedings, the district court found that the putative class' allegations, such as restrictions of in-person attorney client-visitations, impediments to legal mail access, and limited duration of telephone calls, are "ancillary to the removal process" and were not barred by 8 U.S.C. § 1252(b)(9). *Id.* at 1047-48. Rather, the district court interpreted the *Torres* plaintiffs' access-to-counsel claims as conditions of confinement claims, that are "typically distant, legally and factually, from the scope of § 1252(b)(9)." *Id.*

*Torres* is factually distinguishable in that the detained plaintiffs represented a class of similarly situated individuals. SPLC does not represent a class of detained individuals. *See* SAC. *Torres* simply does not stand for the broad proposition that an immigrant advocacy group can allege conditions of confinement claims that circumvent the jurisdictional bar. That is so because central to the decision in *Torres* was the court's determination that the conditions of confinement affected *more than just removal proceedings and bond matters*. *Id.* at 1045, 1049. The *Torres* court specified:

> The communication failures tolerated by Defendants have the effect of disrupting Immigrant Plaintiffs' representation—with lasting consequences not only for bond and removal proceedings, (*id.* ¶¶ 152-56), but also for legal matters outside immigration court. Immigrants detained at Adelanto may have pending habeas petitions, custody matters, criminal appeals, civil rights actions, family-court actions, and petitions for benefits, among other legal matters. (*See, e.g., id.* ¶¶ 165-66.) For unrepresented immigrants, contact with the outside world is even more critical: they must rely on the limited access Defendants provide to find representation and, when that fails, contact family members and friends to gather evidence in support of their cases (both in immigration court and in ancillary proceedings).

*Torres*, 411 F. Supp. 3d at 1045. Because the immigrant plaintiffs' asserted consequences stemming from the conditions that went *beyond* what could be redressed in removal proceedings or via PFR (for example, consequences to family court and criminal matters), the court held the conditions claims "assert rights that can be violated without reference to the effect on their underlying removal proceedings." *Torres*, 411 F. Supp. 3d at 1049. Here, in contrast, SPLC does not allege any conditions of confinement affecting any right unrelated to access to counsel in immigration proceedings. *See* SAC. Nor could it. SPLC does not represent detainees in the Facilities for any purpose other than immigration proceedings. SAC ¶ 97 (SIFI provides "legal representation to indigent immigrants detained in remote locations in the Southeast . . . . SPLC seeks to fulfill this mission by providing direct representation to detained immigrants in bond proceedings, training *pro bono* attorneys to provide effective representation to indigent detainees in their bond proceedings, and facilitating representation in merits hearings for people who would otherwise have no legal recourse."). SIFI staff and volunteers are "immigration practitioners." *Id.* at 102. Accordingly, unlike the detainee plaintiffs in *Torres*, SPLC does not raise any conditions claims that go beyond access to counsel in immigration proceedings. Unlike the criminal and family court interferences alleged in *Torres,* SIFI can only assert barriers to access to counsel affecting immigration proceedings and these are plainly within the competence of immigration judges, the BIA, and the courts of appeal on PFR. *See Torres*, 411 F. Supp. 3d at 1049-50.

Plaintiff's conditions of confinement claim not only raises issues addressing access to counsel in immigration proceedings—rather, the *only* issue is whether Plaintiff's detained clients' right to counsel in immigration proceedings has been violated. SAC ¶¶ 341-47. Thus, as shown above, at the core of SPLC's SAC is alleged harm on behalf of unknown client-detainees

that is entangled with the fairness of individual removal proceedings. *See* SAC ¶¶ 13, 330, 331. As recently reiterated by the Supreme Court, "a noncitizen's various challenges arising from the removal proceeding must be 'consolidated in a petition for review and considered by the courts of appeals.'" *Nasrallah v. Barr*, 140 S.Ct. 1683, at 1690 (2020) (quoting *INS v. St. Cyr*, 533 U. S. 289, 313, and n. 37 (2001)). "By consolidating the issues arising from a final order of removal, eliminating review in the district courts, and supplying direct review in the courts of appeals, the Act expedites judicial review of final orders of removal." *Id.* (citing 8 U.S.C. 1252(b)(9)). Accordingly, this Court lacks subject-matter jurisdiction to review SPLC's claims on behalf of its client-detainees' due-process rights in removal proceedings.

### C. The Court lacks jurisdiction to review discretionary determinations.

The Attorney General's decision regarding detention, bond, or parole is not reviewable by the courts. 8 U.S.C. § 1226(e). As determined by the Supreme Court, the statute precludes an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings*, 138 S. Ct. at 841 (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). In the SAC, SPLC contends that its representation is not limited to removal proceedings, but also embraces bond and parole. SAC ¶¶ 100, 318. Because bond and parole are discretionary determinations that may not be challenged in any court, the Court lacks subject matter jurisdiction to review these claims as well.

Per 8 U.S.C. § 1252(a)(2)(B)(ii):

Notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of title 28, , or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review- (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a).

8 U.S.C. § 1252(a)(2)(B)(ii). Courts are precluded under this section from reviewing any "decision or action" that is committed to the agency's discretion by statute. *See Kucana v. Holder*, 558 U.S. 233, 239 (2009). The "key to [Section] 1252(a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be specified by statute, and that whether such a specification has been made is determined by examining the statute as a whole." *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 200 (3d Cir. 2006) (internal quotations omitted). *See Zhu v. Gonzales*, 411 F.3d 292, 294 (D.C. Cir. 2005) (applying the jurisdictional bar to discretionary waivers under § 1153(b)(2)(B)(i)).

Here, 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review because bond determinations under § 1226(a) are discretionary. Pursuant to 8 U.S.C. § 1226(a), the Attorney General "may" detain an alien or "may" release on bond or conditional release. It is well established that "[n]o court may set aside any action or decision by the [government] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e); *see Demore*, 538 U.S. at 518–22 (noting 8 U.S.C. § 1226(e) strips jurisdiction to consider challenges to discretionary determinations); *C.G.B., et al., v. Wolf., et al.*, 2020 WL 2935111, at *29 (D.D.C. June 2, 2020) (finding it "uncontroverted" that § 1226(e) precludes a noncitizen from challenging the 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release). SPLC attempts to invoke this Court's jurisdiction by cloaking their challenge to Defendants' discretionary actions in the garb of a third-party constitutional claim; however, this does not change the fact that SPLC is challenging discretionary decisions that Congress explicitly removed from this Court's jurisdiction.

Further, SPLC may not challenge Defendants' operational choices concerning discretionary detention determinations per 8 U.S.C. § 1226(e), in addition to 8 U.S.C. § 1252 (a)(2)(b)(ii). Under 8 U.S.C. § 1226(e), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." SPLC's challenge to operational procedures and policies they contend impact bond proceedings is an attempt to circumvent Defendants' unreviewable discretionary authority. *See Demore*, 538 U.S. at 517 (citing *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999)) ("Section 1226(e) likewise deals with challenges to operational decisions…."). At base, "how" the discretionary decision is made cannot be separated from the decision itself. In *Bourdon v. United States Dep't of Homeland Sec*, 940 F.3d 537, 544 (11th Cir. 2019), the Eleventh Circuit recently articulated that if Congress intended to bar judicial review "of only the Secretary's final decision, rather than the processes behind it," Congress would have simply committed the Secretary's discretion to § 1252. However, given that section 1226(e) makes the "exercise of *discretion* itself unreviewable," Congress went "beyond the existing provision that bars review of all discretionary decisions [§ 1252] and instead shielded the Secretary's decision making process from judicial review." *Id.* at 544 (emphasis in original). Here, the speed or correctness of a bond decision that is affected by purported operational barriers to access to counsel, is bound up with the weighing of the evidence and the outcome in a specific case, and is not reviewable. *See* 8 U.S.C. § 1226(a), (e). Rather, to the extent that Defendants' bond, parole, or detention procedures may impact the fairness of removal proceedings, this presents a challenge related to removal proceedings that must be funneled to the Court of Appeals pursuant to 8 U.S.C. § 1252(b)(9).

Also, in the SAC, SPLC vaguely contends that DHS's election of remote locations for the Facilities is not justified and "presents barriers at the expense of SPLC's clients' access to courts

and counsel." SAC ¶¶ 322; *see id.* ¶¶ 3-6, 8, 45, 48, 128. The Court, however, lacks subject-matter jurisdiction to review the discretionary determination of DHS under 8 U.S.C. § 1231(g)(1) as to the "appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); *Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings ... and therefore, to transfer aliens from one detention center to another."). The Attorney General's discretionary power to transfer aliens from one locale to another, as he or she deems appropriate, arises from this statutory language. Consistent with section 1252(a)(2)(B)(ii), it is plain that the statutory authority of the Attorney General under 8 U.S.C. § 1231(g)(1) to "arrange for appropriate places of detention" imports the exercise of discretion. *Aquilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 490 F. Supp. 2d 42, 45 (D. Mass. 2007), *aff'd sub nom. Aguilar*, 510 F.3d 1.  Accordingly, the Court lacks jurisdiction to review SPLC's allegations challenging the location of the Facilities.[6]

---

[6] Defendants also note that the decisions to either construct or contract with the Facilities are beyond the statute of limitations for civil claims.  28 U.S.C. § 2401(a) ("…every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").

## II.  THE COURT LACKS JURISDICTION OVER SPLC'S APA CLAIMS

### A.  SPLC fails to identify the specific agency actions of which they seek judicial review.

SPLC's vague claims concerning anecdotal actions affecting immigration proceedings of detainees does not confer jurisdiction for APA review. Section 702 of the APA provides both a cause of action and a waiver of sovereign immunity for claims in which a plaintiff has "suffered a legal wrong because of agency action," or been "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. To obtain judicial review under this provision, a plaintiff must (1) identify some final "agency action" to be reviewed, and (2) show that it has suffered a "legal wrong" or been "adversely affected or aggrieved" by the action at issue. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-83 (1990). The Court cannot, as SPLC proposes, simply lump together multiple allegations—none of which have been specifically identified—and provide meaningful relief. This sort of programmatic challenge falls outside of § 702's limited waiver of sovereign immunity. *See Osage Producers Ass'n v. Jewell*, 191 F. Supp. 3d 1243 (N.D. Okla. 2016) (rejecting plaintiffs' assertion that the APA does not require it to individually identify each and every decision it seeks to challenge).

Here, the SAC generically describes categories of purportedly arbitrary or unlawful agency practices—such as processes for requesting or conducting in-person or VTC meetings with clients at the Facilities—and requests review of all agency actions falling within those descriptions. Such a programmatic challenge is of the type prohibited under the APA per *Lujan*, 497 U.S. at 882–83. In *Lujan*, the Supreme Court held that absent an explicit congressional authorization to correct the administrative process on a systemic level, agency action is not ordinarily considered "ripe" for judicial review under the APA "until the scope of the

controversy has been reduced to manageable proportions, and its factual components fleshed out, by concrete action that harms or threatens to harm the complainant." *Id.* at 873. Thus, "flaws in the entire 'program' cannot be laid before the courts for wholesale correction under the APA . . . ." *Id.* As in *Lujan*, here the Court faces a generic challenge to an amorphous group of potentially several hundred administrative "decisions" or "actions." *Lujan*, 497 U.S. at 873; *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan*…").

Although SPLC does not style the SAC as an attack on an agency "program," its identification of the agency actions at issue is no less vague and impermissible under the APA. *Osage*, 2016 WL 3093938, at *2 (citations omitted). Reading the SAC, the Court is unable to identify which, or even how many, agency actions are subject to this suit. *Id.* Indeed, based on the discovery propounded, SPLC views relevant agency action in this case to include detainee medical care, housing, bed space, mental health care, shift changes, and the demographic composition of detainees as somehow related to its grasping access to counsel claims. *See* Excerpts of Plaintiff's Discovery Requests at 4, 11, 14, 15 ("Exhibit A") (seeking "review of medical records, both paper and electronic…"). Such wide-reaching, programmatic review is simply unavailable under the APA. *Lujan*, 497 U.S. at 873.

Even if SPLC had identified a discrete agency action, SPLC cannot raise an APA claim because it does not identify a "final agency action," subject to APA review. *See* 5 U.S.C. § 704; *Lujan*, 497 U.S. at 890–93. Generally, two conditions must exist for an agency's action to be rendered "final": (1): "the action must mark 'consummation' of agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences

will flow.," *NIPNLG*, 2020 WL 2026971 at *7-9 (*citing Bennett v. Spear*, 520 U.S. 154, 177-78

(1997)). The SAC lacks any specific final agency action from which "legal consequences" flow.

While SPLC identifies several areas of the PBNDS with respect to legal visitation as a

mechanism to formulate an APA reviewable action, the only decision in removal proceedings

with the actual "force and effect of law" would be a decision by an immigration judge in an

*individual case* and not any decision to adopt or not adopt particular practices for counsel access.

SAC ¶ 351 (referencing various provisions of section 5.7 of the 2008 and 2011 PBNDS); *e.g.*,

*NIPNLG*, 2020 WL 2026971 at *9; *see Bennett*, 520 U.S. at 177–78; *DRG Funding Corp. v.*

*HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) ("[C]ourts have defined a nonfinal agency order as

one, for instance, that does not itself adversely affect complainant but only affects his rights

adversely on the contingency of future administrative action") (internal quotations omitted)).

Various courts have ruled against relief for the same type of vague and programmatic

challenges to ICE's on-going policies and procedures that SPLC brings forth in this case. In

*C.G.B.., et al., v. Wolf, et al.*, the court denied relief under the APA for failure to identify an

agency action within the meaning of § 702, "much less a 'final agency action' within the

meaning of § 704." *C.G.B., et al. v. Wolf., et al*., 2020 WL 2935111, at *33 (D.D.C. June 2,

2020). There, plaintiffs challenged ICE's alleged failure to implement all CDC and World Health

Organization protocols designed to combat COVID-19, and sought immediate release. *Id.* at *1,

12, 33. Plaintiffs also challenged the "continuing (and thus constantly changing) operations" of

ICE across many detention facilities, rather than the "single step or measure" that may be

reviewable as a final agency action under the APA. *Id.* at *33 (citing *Lujan*, 497 U.S. 871 at

890); *e.g.*, *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("While a single step or

measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action'

under the APA"). SPLC similarly challenges the enforcement of PBNDS compliance as it relates to legal visitation across the Facilities without identifying a final agency action within the meaning of § 704. *See generally* SAC ¶ 351 (identifying various program operations in the PBNDS as they relate to legal visitation across the Facilities). As in *C.B.G.*, the Court should dismiss SPLC's APA claim.

Similarly, in *NIPNLG*, the court held that EOIR's and ICE's policies on detainees' access to counsel during the COVID-19 pandemic were not reviewable final agency actions under the APA. *NIPNLG*, 2020 WL 2026971, at *9-10. Plaintiff's argued that "legal consequences flow from the policies that were put in place" because "the rights of detained persons and their counsel are being infringed upon by endangering their health and well-being along with restricting access to counsel, which limits the ability to properly prepare for and attend important immigration proceedings." *Id.* at *9. Judge Nichols found that ICE's policies on the COVID-19 pandemic "are implemented on a facility-by-facility and individual-by-individual basis, based on the particularized circumstances present at detention centers and the specific requests for attorney-client teleconferences, VTCs, or in-person meetings." *Id.* at *9. It is unclear when and what legal consequences would flow from these policies, nor did the court find general accusations of harm sufficient. *Id.*

Like *NIPNLG*, it is impossible to tell whether any particular attorney-client visitation meeting or the VTC meeting scheduled by SPLC at a particular facility will have any effect on the outcome of its client-detainee's removal proceedings or any legal consequences before an immigration judge renders a decision. *See NIPNLG*, 2020 WL 2026971 at *9 (finding that EOIR's policies do not constitute final agency action because they do not determine any rights or obligations, nor do legal consequences flow from those policies). Rather, legal consequences

flow and rights and obligations are determined only from the particular decision of an

immigration judge implementing EOIR's policies in a specific case. *Id.* Accordingly, SPLC's

abstract allegations of harm do not amount to reviewable agency action under the APA.

Any reliance on *Torres*, 411 F. Supp. 3d at 1069, with respect to SPLC's APA claims is

misguided. The *Torres* court held that ICE's alleged failure to enforce its PBNDS standards at a

contracted detention facility was final agency action for the purposes of surviving a Federal Rule

of Civil Procedure 12(b)(6) motion to dismiss because the complaint's factual allegations

sufficiently established that "any past or ongoing non-compliance at [the detention facility] [wa]s

allegedly the result of an agency decision not to enforce the terms of its contract." *Id.* at 1069.

Here, in contrast, Plaintiff does not identify any discrete final agency decision not to implement

the PBNDS or other standards. *See Citizens for Responsibility & Ethics in Washington v. U.S.*

*Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 49 (D.D.C. 2019) ("[A] plaintiff must challenge a

'discrete agency action' and cannot make 'a broad programmatic attack' on an agency's

compliance with a statutory scheme."); *RCM Techs., Inc. v. DHS*, 614 F. Supp. 2d 39, 46

(D.D.C. 2009) ("Courts stand ready to entertain appeals from specific, concrete agency

adjudications. But absent that, courts have neither the resources nor the expertise to superintend

agency policy-making."). Because SPLC raises no challenge to a discrete agency action—

ostensibly to avoid running afoul of the jurisdictional bar at 8 U.S.C. § 1252(b)(9)—the Court

should dismiss the APA claim consistent with the decision in *NILPNLG*, 2020 WL 2026971 at

*5, and *C.G.B.*, 2020 WL 2935111, at *33.

Further, to raise a claim under section 706(1), "[a]n agency must have failed to perform a

non-discretionary duty to act." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64

(2004); *e.g.,* SAC ¶¶ 353-54. Thus, "a claim under § 706(1) can proceed only where a plaintiff

asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64. SPLC cites that Defendants' failure to enforce the PBNDS attorney access requirements are "not in accordance with law." 5 U.S.C. § 706(2)(A); *see* SAC ¶ 354. But, PBNDS legal visitation standards that SPLC relies upon are not an "action [where] by which rights or obligations have been determined, or from which legal consequences will flow" but rather management expectations and guidelines for Facilities within ICE's detention system. *See* 2008, 2011 PBNDS at Preface; *see e.g.*, *NIPNLG*, 2020 WL 2026971, *10 ("[A]s to their access-to-counsel claims, Plaintiffs have failed to point to any statute or other source that requires Defendants to have taken specific and particular steps during the pandemic."); *Cobell v. Norton,* 392 F.3d 461, 472 (D.C. Cir. 2004) ("The APA's requirement of '*discrete* agency action,' *Southern Utah* explained, was 'to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve.'") (quoting *Norton*, 542 U.S. at 66). Thus, the Court should dismiss the APA claim where Plaintiff has not alleged a violation of a non-binding duty.

There is no genuine dispute that SPLC's client detainees do not face a final agency action with respect to access to counsel unless and until they individually receive a final removal order from an immigration judge. Further, 1252(b)(9) is an adequate and exclusive route for SPLC's client-detainees to seek relief of any access to counsel limitations arising in removal proceedings. As a matter of law, this Court should grant Defendants' Motion with respect to Claim No. 6.

**B. The APA does not provide a mechanism for review of claims barred by statute.**

SPLC cannot state an APA claim because, as shown, Congress has set out a specific and exclusive mechanism for review of decisions related to removal proceedings, 8 U.S.C. § 1252(a)(5), and the APA provides a cause of action only for claims challenging "final agency action for which there is *no other adequate remedy* in a court." 5 U.S.C. § 704 (emphasis added). To "determin[e] whether an adequate remedy exists," courts "focus[] on whether a statute provides an independent cause of action or an alternative review procedure.*" El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). Here, APA review would impermissibly provide review that is duplicative of the specific alternative review procedure available under 8 U.S.C. § 1252(b)(9) over any challenge to action taken to remove an alien. And "if an adequate remedy at law exists, equitable relief is not available under the APA." *Cohen v. United States*, 650 F.3d 717, 731 (D.C. Cir. 2011).

Finally, the APA does not provide a valid cause of action if another statute precludes judicial review through its "'express language, . . . the structure of the statutory scheme, its objectives, its legislative history, [or] the nature of the administrative action involved.'" *Joorabi v. Pompeo*, No. 1:20-CV-108-RCL, 2020 WL 2527209, at *5 (D.D.C. May 17, 2020) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)); *see* 5 U.S.C. § 701(a)(1). Here, sections 1252(a) and (b)(9), make clear that Congress intended to funnel all claims "arising" from actions taken to remove an alien through the administrative procedure and via PFR to the Court of Appeals. SPLC in essence posits that, while Congress unequivocally directed channeling of such claims, it was nevertheless the legislative judgment to permit organizational plaintiffs the ability to advance claims that alien petitioners themselves were otherwise barred from raising in the district court. There is no basis for attributing to Congress the intent to draw

such a distinction based on the complex, technical funneling provisions in the INA. *See Block*, 467 U.S. at 345. To do so would otherwise render Congress's express statutory intent to bar such review by district courts a nullity and permit third-parties, like SPLC, to achieve what the statute was specifically designed to prevent. Congress channeled disputes concerning specific and distinct final actions taken during removal proceedings to administrative proceedings in the first instance. As a result, the APA does not provide a cause of action for SPLC's claims.[7]

## **CONCLUSION**

For the foregoing reasons, Defendants request the Court to grant its Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Dated: July 14, 2020                    Respectfully submitted,


                                        ETHAN P. DAVIS
                                        Acting Assistant Attorney General
                                        Civil Division

                                        WILLIAM C. PEACHEY
                                        Director, Office of Immigration Litigation
                                        District Court Section

                                        YAMILETH G. DAVILA
                                        Assistant Director

                                        */s/Ruth Ann Mueller*
                                        RUTH ANN MUELLER
                                        (D.C. Bar No. 1617339)
                                        Trial Attorney
                                        U.S. Department of Justice, Civil Division
                                        Office of Immigration Litigation
                                        District Court Section

---

[7] The APA's ban on judicial review extends beyond instances where such review has been expressly or impliedly prohibited. The APA also specifically exempts from judicial review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Here, to the extent SPLC seeks review of ICE's discretionary policies, practices, actions, and decision regarding bond, parole, and housing of detainees in the Facilities, such a challenge is barred by sections 1226(e), 1252(a)(2)(B)(ii), and 1231(g)(1).

P.O. Box 868, Washington D.C. 20044

DAVID BYERLEY
(D.C. Bar No. 1618599)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

JAMES J. WALKER
(D.C. Bar No. 1032636)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

CHRISTOPHER LYERLA
(TX Bar No. 24070189)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington D.C. 20044

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this motion and the accompanying memorandum of law on the Court and all parties of record by filing them with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

Dated: July 14, 2020

/s/ Ruth Ann Mueller
Attorney for Defendants
